The opinion of the court was delivered by
Manning, C. J.
The defendant is prosecuted for openly and publicly selling intoxicating liquors on Sunday, and on conviction was fined fifty dollars. It is the first appealed prosecution under what is known as the “ Sunday law.” The General Assembly in 1878, Sess. Acts p. 135, delegated to the police juries full and plenary authority to make such regulations as they may deem proper in regard to the sale, barter, or *664 exchange of intoxicating liquors or merchandize on Sunday, and to totally prohibit the same on Sunday, if in their judgment necessary. Yiolations of the jury ordinances, made under this Act, are to be considered misdemeanors, and the penalties are to be enforced by indictment and information, and the power thus conferred upon these juries is to extend over and apply to all incorporated towns and villages within the limits of the respective parishes.
The defendant moved to quash the information on several grounds;
1. The Act of 1878 violates section 10 of article 2 of the constitution of the United States in this, that the defendant had paid fora license for carrying on his business during the whole of the present year, and the police jury’s ordinance prohibiting it on Sunday violated a contract.
2. That it violates art. 110 of our State constitution in that it impairs the obligation of a contract, and divests vested rights, for no purpose of public utility, and without adequate compensation.
3. That it violates art. 12 of the constitution, in that it is not intended as a police or sanitary regulation, but to enforce the observance of the Christian sabbath.
4. That it is in violation of “ the law of the land,” is without public utility, and unwarrantably, unnecessarily, and arbitrarily restricts defendant in the use of his capital and the pursuit of his lawful and licensed business.
5. That the objects of the law are not expressed in its title, in this that'the title does not indicate that violations of the jury ordinance are made misdemeanors, punishable by indictment or information.
6. That the Act was intended to confer on incorporated towns and villages the power therein granted to police juries, and not to confer upon the juries power to pass ordinances affecting towns and villages.
7. That the Act is not applicable to incorporated cities, but only to incorporated towns and villages, and as Baton Eouge is a city, it is not covered by the act.
It is unnecessary in this case to consider the regulatk n of the police jury affecting any other matter than the sale, barter, or exchange of intoxicating liquors on Sunday, and we confine ourselves to that question, pretermitting any other aspect of the regulation or prohibition than that which relates to the sale, barter, or exchange of that kind of beverages. TVe shall examine the several grounds of the motion in their order.
1. The objection that regulations, such as this, are in conflict with that clause of the constitution of the United States which forbids the States passing.laws violating the obligation of contracts, has been often considered, and Cooley says; it has been invariably held that this clause *665 does not so far remove from State control the rights and properties which depend for their existence or enforcement upon contracts, as to relieve them from the operation of such general regulations for the good government of the State and the protection of the rights of individuals as may be deemed important. It is held that all contracts and all rights are subject to this power, and regulations which affect them may not only be made by the State, but must also be subject to change from time to time, with reference to the general well-being of the community, as circumstances change, or as experience demonstrates the necessity of such changes. Const. Lim. 574.
2. The same author says that the power to make these regulations has been sustained, when the question of conflict with State constitutions, or with general fundamental principles, has been raised. They are regarded as police regulations, established by the legislature, for the prevention of intemperance, pauperism, and crime, and for the abatement of nuisances. There is no instance, in which the power of the legislature to make such regulations as may destroy the value of property, without compensation to the owner, appears in a more striking light than in the case of statutes, whereby the sale of intoxicating liquors is entirely prohibited, and the demolition and destruction even of the building used for that purpose is commanded; and it is only where, in framing such legislation, care has not been taken to observe those principles of protection which surround the persons and dwellings of individuals, securing them against unreasonable searches and seizures, and giving them a right to trial before condemnation, that the courts have felt at liberty to declare that it exceeded the proper province of police regulation. Ibid. 583.
3. This is the rock upon which'the prosecution would split, if it really existed.
The constitution of the United States forbids the Congress from making any law respecting an establishment of religion, or prohibiting the free exercise thereof. But this is an inhibition to Congress only, leaving to the State governments the whole power over the subject of religion. There are considerable differences in the various State constitutions on this subject, but the general provision of the most perfect equality before the law of all shades of religious belief, is common to all of them.
It has been frequently said that Christianity is a part of the law of the land, and while in a certain sense and for certain purposes it may be true in those States which adopted and have retained the common law, it must be remembered that system never prevailed, nor had any lodgment in this State, save the brief period between the acquisition of this country by the United States and the Act of 1805, when the crimi *666 nal part of that system was in force. Mr. Justice Story said in the Girod will case that, although Christianity is a part of the common law of the State (Pennsylvania), it is only so in this qualified sense, that its divine origin and truth are admitted. Vidal v. Girard, 2 How. 198. And it has been said by another court, that Christianity was never considered a part of the common law; so far as that for a violation of its injunctions, independent of the established laws of man, and without the sanction of any positive act of the Parliament of England, made to-enforce those injunctions, any man could be drawn to answer in a common-law court. State v. Chandler, 2 Harr. 555.
Some of the States of the original thirteen had prohibitions of blasphemy, profanity and the like in force, as existing in the common law of England at the time of their separation ; and statutes of the most vigorous kind were passed in some of them, indicating with minute precision what should and what should not be done on Sunday, for example, the Blue laws of Connecticut. We have been as yet spared in this State the infliction of similar outcroppings of the spirit of Puritanism, and the same learned author already quoted well says; — the laws against the desecration of the Christian Sabbath, by labour or sports, are not so. readily defensible by arguments, the force of which all would admit. It is no hardship to any one to compel him to abstain from public blasphemy or other profanity, and none can complain that his rights of conscience are invaded by this enforced respect to a prevailing religious sentiment. But the Jew, who is forced to respect the first day of the week, when his conscience requires of him the observance of the seventh also, may plausibly urge that the law discriminates against his religion, and by forcing him to keep a second Sabbath in each week, unjustly though indirectly punishes him for his religious-belief. Const. Lim. 476.
If therefore the regulation had for its object the enforcement of the observance of the Christian Sabbath, as charged in the third ground of the defendant’s motion, it would be open to assault; but it is manifestly a police regulation. Like the prohibition of the sale of intoxicating liquors on election-day, it is a regulation under the police power of the-State for the preservation of public order. Blackstone’s definition of the police power of the State is, “ the due regulation.and domestic order of the kingdom, whereby the inhabitants of a State, like members of a well-governed family, are bound to conform their general behaviour to the rules of propriety, good neighbourhood, and good manners, and to be decent, industrious, and inoffensive in their respective stations,”.4 Com. 162 and this definition has not been improved by modern writers. An eminent judge has described it as “ the power vested in the legislature to make, ordain, and establish all manner of wholesome and *667 reasonable laws, and ordinances, either with penalties or without, not repugnant to the constitution, as they shall judge to be for the good and welfare of the commonwealth and of the subjects of the same.” Shaw C. J. in Com. v. Alger, 7 Cush. 84. And he adds, it is much easier to perceive and realize the existence and sources of this power than to mark its boundaries, or to prescribe limits to its exercise.
Herein lies the whole difficulty in this and similar regulations. The distinction between a regulation, made solely in virtue of the police power, and for the preservation of the public order alone, and one made for the observance of a particular day, set apart by the votaries of a particular religion for special religious purposes, is often difficult to explain or define, and must in general be left for determination in each case. The general proposition may be enunciated, that the preservation of the public morals and of public order is peculiarly the subject of legislative supervision, and whether the prohibited act is made a criminal offence, punishable under the general laws, or subject to punishment under municipal by-laws, or parochial ordinances, are questions which the legislature must decide; and Oooley on this point adds the significant caution, that “ whatever deference the constitution or the laws may require to be paid in some cases to the conscientious scruples or religious convictions of the majority, the general policy always is to avoid with care any compulsion, which infringes the religious scruples of any, however little reason may seem to others to underlie them.” Ibid. 478.
4. This ground, that the prohibition is in violation of “the law.of the land” has been considered in the discussion of the others. Mr. Webster defined this expression in the Dartmouth College case; — “ By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property, and 'immunities under the protection of the general rules which govern society.” We have endeavored to demonstrate that the regulation in question does not affect any immunity which may not be abridged or even destroyed when the interests of public order require it.
5. The title of the Act is sufficiently comprehensive. It indicates very clearly its whole purpose. No one after reading it could fail to be informed of the object of the legislation, and that is the intent of the constitutional provision upon that subject.
6. This is untenable. The phraseology of the Act — the powers thus conferred shall extend over and, apply to all incorporated towns and villages — precludes such construction.
7. The claim that incorporated cities are not subject to the Act, but only towns and villages, does not much impress us. Many towns *668 have the same weakness for assuming a title that imports broad territorial area and large population, that some of their inhabitants have latterly developed to appropriate the grand names of historio personages, but the baptism of a legislative Act neither enlarges their dimensions nor swells their numbers. The use of the borrowed designation may be permitted for the indulgence of a pardonable vanity, but not to protect against the penalty of a violated law.
Judgment affirmed.